IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CV-309-D

ANDREW WHITE,                          )
                                       )
                    Plaintiff,         )
                                       )
        v.                             )              **ORDER**
                                       )
RITE AID OF NORTH CAROLINA, INC.,      )
RITE AID HDQTRS. CORP., and            )
NIAZ SIDDIQUI,                         )
                                       )
                    Defendants.        )

On June 12, 2015, Andrew White ("White" or "plaintiff") sued his former employer Eckerd

Corporation d/b/a Rite Aid ("Rite Aid" or "defendant") and his former district manager Niaz

Siddiqui ("Siddiqui").[1] White alleges that Rite Aid and Siddiqui violated North Carolina's

Retaliatory Employment Discrimination Act ("REDA") (count one), that Rite Aid wrongfully

discharged him in violation of North Carolina public policy (count two), that Rite Aid and Siddiqui

retaliated against him in violation of the Family and Medical Leave Act ("FMLA") (count three),

and that Rite Aid and Siddiqui intentionally inflicted emotional distress on him (count four). See

Compl. [D.E. 1-2]. On July 10, 2015, Rite Aid timely removed the action. See [D.E. 1-3]. Siddiqui

moved to dismiss White's REDA claim, and Rite Aid and Siddiqui moved to dismiss a portion of

White's wrongful discharge claim, White's FMLA claim, and White's intentional infliction of

emotional distress claim. See [D.E. 12, 18]; Fed. R. Civ. P. 12(b)(6). White responded in opposition

[D.E. 14, 23], and Rite Aid and Siddiqui replied. See [D.E. 20, 24]. As explained below, Rite Aid

_____

[1] White improperly named "Rite Aid of North Carolina, Inc." and "Rite Aid Hdqtrs. Corp."
as defendants. See Compl. 1. Those two defendants are dismissed, and the sole defendants are Rite
Aid and Siddiqui.

and Siddiqui's motions to dismiss are granted in part and denied in part.

I.

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. See Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562–63, 570 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In considering a motion to dismiss, a court need not accept a complaint's legal conclusions drawn from the facts. See, e.g., Iqbal, 556 U.S. at 678. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 677–79.

Rite Aid employed White as a pharmacy manager from May 2011 until terminating his employment on April 7, 2014. See Compl. ¶¶ 9, 34. The court has federal question jurisdiction under 28 U.S.C. § 1331 due to White's FMLA claims and has supplemental jurisdiction over his state-law claims under 28 U.S.C. § 1367(a).

In count one, White claims that Rite Aid and Siddiqui retaliated against him because he filed a workers' compensation claim, thereby violating REDA. See Compl. ¶¶ 37–49. In count two, White claims that Rite Aid wrongfully discharged him for reporting to Siddiqui the alleged Medicare fraud of a co-worker and for filing a workers' compensation claim, in violation of North Carolina public policy. See id. ¶¶ 50–62.[2] In count three, White claims that Rite Aid and Siddiqui retaliated

---

[2] Unlike counts one, three, and four, which White asserts against "defendants," White sues only "defendant" in count two. Compare Compl. ¶¶ 37–49, 63–79 with id. ¶¶ 50–62. The court

2

against him in violation of the FMLA. See Compl. ¶¶ 63–73. Finally, in count four, White alleges that Rite Aid and Siddiqui engaged in outrageous and extreme conduct in accusing White of wrongdoing in order to pretextually terminate his employment, and that they thereby intentionally inflicted severe emotional distress on White. See id. ¶¶ 74–79.

As for White's state-law claims, this court must predict how the Supreme Court of North Carolina would rule on their legal viability. See, e.g., Ellis v. Louisiana-Pacific Corp., 699 F.3d 778, 782–83 (4th Cir. 2012); Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co., 433 F.3d 365, 369 (4th Cir. 2005). In doing so, the court looks first to decisions of the Supreme Court of North Carolina, and then to decisions of the North Carolina Court of Appeals. See, e.g., Ellis, 699 F.3d at 782–83. Moreover, in predicting how the Supreme Court of North Carolina would rule, the court may not create or expand North Carolina public policy. See, e.g., Time-Warner Entm't –Advance/Newhouse P'ship v. Carteret –Craven Elec. Membership Corp., 506 F.3d 304, 314–15 (4th Cir. 2007).

In count one, White alleges that Rite Aid and Siddiqui terminated him in retaliation for filing a workers' compensation claim and thereby violated REDA. See id. ¶¶ 37–49. In order to state a REDA claim, White must plausibly allege: "(1) that he exercised his rights as listed under N.C. Gen. Stat. § 95-241(a), (2) that he suffered an adverse employment action, and (3) that the alleged retaliatory action was taken because the employee exercised his rights under N.C. Gen. Stat. § 95-

---

construes White's wrongful discharge claim in count two to refer only to his employer Rite Aid. Notably, an employee in North Carolina can state a wrongful discharge in violation of public policy claim only against his employer, not a co-worker or manager. See, e.g., Iglesias v. Wolford, 539 F. Supp. 2d 831, 839–40 (E.D.N.C. 2008); Garner v. Rentenbech Constructors, Inc., 350 N.C. 567, 572, 515 S.E.2d 438, 441 (1999). Alternatively, to the extent that White intended to name Siddiqui in count two, the court dismisses count two against Siddiqui for failure to state a claim upon which relief can be granted. See Iglesias, 539 F. Supp. 2d at 839–40.

3

241(a)." White v. Cochran, 216 N.C. App. 125, 129, 716 S.E.2d 420, 424 (2011) (quotation omitted).

Siddiqui contends that White has failed to plausibly allege that he made the decision to terminate White's employment in retaliation for White's workers' compensation claim. See [D.E. 24] 1–3. The court concludes, however, that White's REDA claim against Siddiqui has eked across the plausibility line. Thus, the court denies Siddiqui's motion to dismiss count one.

In count two, White alleges wrongful discharge in violation of North Carolina public policy. Such a claim is a narrow exception to North Carolina's general rule of employment at will. See, e.g., Whitt v. Harris Teeter, Inc., 359 N.C. 625, 625, 614 S.E.2d 531, 532 (2005) (per curiam) (adopting dissenting opinion at 165 N.C. App. 32, 43–50, 598 S.E.2d 151, 159–63 (2004) (McCullough, J., dissenting)); Garner, 350 N.C. at 568–72, 515 S.E.2d at 439–41; Amos v. Oakdale Knitting Co., 331 N.C. 348, 350–54, 416 S.E.2d 166, 167–70 (1992); Coman v. Thomas Mfg. Co., 325 N.C. 172, 176–78, 381 S.E.2d 445, 447–49 (1989). To state a claim of wrongful discharge in violation of North Carolina public policy, a plaintiff must plausibly identify and rely on a specific North Carolina statute or North Carolina constitutional provision as stating North Carolina public policy. See, e.g., Garner, 350 N.C. at 568–72, 515 S.E.2d at 439–41; Amos, 331 N.C. at 350–54, 416 S.E.2d at 167–170; Coman, 325 N.C. at 176, 381 S.E.2d at 447; Horne v. Cumberland Cty. Hosp. Sys., Inc., 746 S.E.2d 13, 17–19 (N.C. Ct. App. 2013); Gillis v. Montgomery Cty. Sheriff's Dep't, 191 N.C. App. 377, 379–81, 663 S.E.2d 447, 449–50 (2008); Whiting v. Wolfson Casing Corp., 173 N.C. App. 218, 222, 618 S.E.2d 750, 753 (2005); Considine v. Compass Grp. USA, Inc., 145 N.C. App. 314, 321, 551 S.E.2d 179, 184 (2001), aff'd, 354 N.C. 568, 557 S.E.2d 528 (2001) (per curiam). A plaintiff asserting wrongful discharge in violation of North Carolina public policy may not rely on federal law as stating North Carolina public policy. See, e.g., Coman, 325 N.C. at 176–78, 381

4

S.E.2d at 447–49; McDonnell v. Guilford Cty. Tradewind Airlines, Inc., 194 N.C. App. 674, 679–80, 670 S.E.2d 302, 306–07 (2009); Whiting, 173 N.C. App. at 222, 618 S.E.2d at 753; accord Feldman v. Law Enf't Assocs. Corp., 779 F. Supp. 2d 472, 495–97 (E.D.N.C. 2011); Leach v. N. Telecom, Inc., 141 F.R.D. 420, 426 (E.D.N.C. 1991).

In count two, White alleges that he reported what he believed to be a co-worker's Medicare fraud to Siddiqui on or about December 2, 2013. See Compl. ¶ 19. White claims that Rite Aid violated North Carolina public policy in April 2014 by firing White for reporting this alleged Medicare fraud. See id. ¶¶ 52–53. Specifically, White's complaint states:

> It is the policy of North Carolina as expressed in the law of the State of North Carolina, specifically Articles 19 and 20 of Chapter 14, and Articles 4A, B, & C of Chapter 90 of the North Carolina General Statutes and common law, that its citizens not engage in or condone fraud.

Id. ¶ 52. White then asserts that "[i]t is against the public policy of North Carolina for an employee to be discharged for reporting fraudulent behavior" and that Rite Aid "willfully discharged [White] after [White] reported fraudulent behavior by a co-worker." Id. ¶¶ 53–54.

White's oblique references to wide swaths of the North Carolina General Statutes in Chapters 14 and 90 and to North Carolina's entire body of common law are not sufficiently specific to put Rite Aid on notice of the public policy its termination of White allegedly violated. See, e.g., Horne, 746 S.E.2d at 17–19; Gillis, 191 N.C. App. at 379–81, 663 S.E.2d at 449–50; Whiting, 173 N.C. App. at 222–23, 618 S.E.2d at 753–54; Considine, 145 N.C. App. at 321–22, 551 S.E.2d at 184. Thus, White has failed to state a claim in count two concerning his alleged termination for reporting fraudulent behavior, and that portion of count two is dismissed without prejudice.[3]

---

[3] Rite Aid did not move to dismiss White's claim in count two that Rite Aid fired White in retaliation for filing a workers' compensation claim, and that portion of count two survives.

In count three, White alleges an FMLA retaliation claim against Rite Aid and Siddiqui. In order to state a FMLA retaliation claim, White must plausibly allege that (1) he engaged in protected activity under the FMLA; (2) his employer took an adverse employment action against him; and (3) there is a causal link between the two events. See, e.g., 29 U.S.C. § 2615(a); 29 C.F.R. § 825.220(c); Adams v. Anne Arundel Cty. Pub. Schs., 789 F.3d 422, 429–30 (4th Cir. 2015); Laing v. Fed. Express Corp., 703 F.3d 713, 717–23 (4th Cir. 2013); Dotson v. Pfizer, Inc., 558 F.3d 284, 296–97 (4th Cir. 2009); Yashenko v. Harrah's NC Casino Co., 446 F.3d 541, 550–51 (4th Cir. 2006); Nichols v. Ashland Hosp. Corp., 251 F.3d 496, 502–03 (4th Cir. 2001); Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 301–02 (4th Cir. 1998). White alleges that he engaged in protected activity by taking FMLA leave from December 6, 2013, through December 27, 2013. See Compl. ¶¶ 13, 65–67. White also alleges that on April 7, 2014, Rite Aid terminated his employment. See id. ¶ 34. Thus, White has stated an FMLA retaliation claim against Rite Aid.

As for White's FMLA retaliation claim against Siddiqui, the FMLA defines "employer" to include "any person who acts, directly or indirectly, in the interest of an employer to any employee." 29 U.S.C. § 2611(4)(A)(ii)(I); 29 C.F.R. § 825.104(a). Here, White has plausibly alleged that Siddiqui was a manager and supervisor acting in Rite Aid's interest and retaliated against him for exercising his rights under the FMLA. See Compl. ¶¶ 63–73. Thus, White has stated a FMLA retaliation claim against Siddiqui. See, e.g., Thompson v. Real Estate Mortg. Network, 748 F.3d 142, 153–54 (3d Cir. 2014); Haybarger v. Lawrence Cty. Adult Prob. & Parole, 667 F.3d 408, 414–17 (3d Cir. 2012).

In opposition to these conclusions concerning White's FMLA claims, Rite Aid and Siddiqui contend that White fails to plausibly allege that he had a FMLA-qualifying "serious health condition." See [D.E. 13] 5–7; [D.E. 19] 7–8; [D.E. 20] 4–5; [D.E. 24] 5–6. Again, however, the

6

court concludes that White's complaint ekes across the plausibility line. Whether White will survive a motion for summary judgment is an issue for another day. Cf. Hurley v. Kent of Naples, Inc., 746 F.3d 1161, 1166–68 (11th Cir. 2014); Nicholson v. Pulte Homes Corp., 690 F.3d 819, 828–29 (7th Cir. 2012); Bone v. G4S Youth Servs., LLC, 686 F.3d 948, 958–59 (8th Cir. 2012); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 669–70 (7th Cir. 2011).

In count four, White alleges intentional infliction of emotional distress against Rite Aid and Siddiqui. In order to state a claim of intentional infliction of emotional distress ("IIED"), White must plausibly allege: (1) that the defendants engaged in extreme and outrageous conduct; (2) that the conduct was intended to cause severe emotional distress; and (3) that the conduct in fact caused severe emotional distress. See Waddle v. Sparks, 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992). To be considered "extreme and outrageous" the conduct must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Hogan v. Forsyth Country Club Co., 79 N.C. App. 483, 493, 340 S.E.2d 116, 123 (1986) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). Whether conduct qualifies as "extreme and outrageous" is a question of law for the court. See, e.g., Lenins v. K-Mart Corp., 98 N.C. App. 590, 599, 391 S.E.2d 843, 848 (1990).

Under North Carolina law, it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to support a claim of IIED. See, e.g., Bratcher v. Pharm. Prod. Dev., Inc., 545 F. Supp. 2d 533, 544–45 (E.D.N.C. 2008); Efird v. Riley, 342 F. Supp. 2d 413, 427 (M.D.N.C. 2004); Thomas v. N. Telecom, Inc., 157 F. Supp. 2d 627, 635 (M.D.N.C. 2000); Atkins v. USF Dugan, Inc., 106 F. Supp. 2d 799, 810–11 (M.D.N.C. 1999). "[L]iability clearly does not extend to mere insults, indignities, [or] threats . . . ." Hogan, 79 N.C. App. at 493, 340 S.E.2d at 123 (citing Restatement (Second) of Torts § 46 cmt. d (1965)). Rather,

7

"[i]n cases where North Carolina courts have found IIED claims actionable, the conduct has been extremely egregious, and involved sexual advances, obscene language, and inappropriate touching." Bratcher, 545 F. Supp. 2d at 545 (collecting cases); Moody-Williams v. LipoScience, 953 F. Supp. 2d 677, 683 (E.D.N.C. 2013); see also Payne v. Whole Foods Mkt. Grp., Inc., 812 F. Supp. 2d 705, 710 (E.D.N.C. 2011), aff'd, 471 F. App'x 186 (4th Cir. 2012).

Here, White has failed as a matter of law to allege conduct sufficient to sustain his IIED claim against the defendants. See, e.g., Moody-William, 953 F. Supp. 2d at 682–84; Payne, 812 F. Supp. 2d at 710; Bratcher, 545 F. Supp. 2d at 544–45; Sims-Campbell v. Welch, 769 S.E.2d 643, 648–49 (N.C. Ct. App. 2015); Hogan, 79 N.C. App. at 493–94, 340 S.E.2d at 122–23. Thus, the court dismisses without prejudice White's IIED claim against Rite Aid and Siddiqui.

## II.

In sum, the court GRANTS in part and DENIES in part each motion to dismiss [D.E. 12, 18]. The court DISMISSES the portion of count two asserting that Rite Aid fired White in retaliation for internally reporting a co-worker's alleged fraudulent behavior and DISMISSES count four. The sole remaining defendants are Eckard Corporation d/b/a Rite Aid and Niaz Siddiqui. The clerk shall amend the caption and docket.

SO ORDERED. This 20 day of November 2015.

JAMES C. DEVER III
Chief United States District Judge

8